this principle are those of mortgagees, sureties, and guarantors.

In this case, Wing, as deputy collector, had sold to the bankrupts revenue stamps to the amount of two thousand and ninety dollars and forty cents. At the time of the sale of one thousand dollars of these stamps, two checks on a firm of bankers in Detroit, drawn by C. Ives, one of the bankrupts, were delivered to Wing, one for five hundred dollars and one for five hundred and ninety dollars and forty cents, both of which were dishonored on presentation. Stamps to the amount of one thousand dollars more were delivered on the day of the failure of the bankrupts, to their shipping clerk, on his statement that Mr. Ives was ready to pay for them. Much of the testimony taken seems to have for its purpose to show some arrangement between the bankrupts, Mr. T. E. Wing, the father and bondsman of the deputy collector, and Mr. C. R. Wing; but, whatever it shows, the fact is left clear that stamps to the value claimed were delivered to the bankrupts, and they have not been paid for. The testimony also shows that the government makes no claim against the bankrupt's estate, because the amount has been assumed and paid by Mr. Wing, the deputy collector, either out of his own money, or by means furnished by his father, who is his bondsman. He made this payment because he had become legally liable for the value of the stamps which he had delivered to the bankrupts, and for which they had not paid. This liability results from his duty as a public officer to take nothing but money. That public officers do constantly take checks upon banks as money, and that their own and the convenience of business men dealing with them is thereby promoted, is, probably, well known. But if they should refuse to take anything but coin, or the currency furnished by the government, and should then be imposed upon by counterfeits, their liability would be the same as it is upon a protested check; and thus whatever they take, they become, as public officers, guarantors to the government, on behalf of the parties with whom they have dealings, that that which they treat as money shall produce money to the government. A collector in the position now occupied by Mr. Wing is a guarantor of the most meritorious character. If the government were now prosecuting this claim, it would be paid in full, and it seems to me inequitable to allow the general creditors of the bankrupts' estate to be benefited at the expense of the deputy collector, who, to make good his guaranty to the government, has assumed and paid the sum owing by the bankrupts' estate.

T. Romeyn, for assignee.
A. Russell, for claimant.

BROWN, District Judge, approved the opinion of the register, and directed an order to be entered subrogating Wing to the rights of the United States as a preferred creditor.

## Case No. 8,663.

### In re McBRIDE.

[1 Wkly. Notes Cas. 16.]

District Court, E. D. Pennsylvania. Oct. 1, 1874.

BANKRUPTCY PRACTICE—REGISTER'S FEES—NO ASSETS IN HANDS OF ASSIGNEE.

The register reported to the court that he had received no payment for his services, except the deposit fee of $50, no assets having come into the hands of the assignee, and petitioned the court to make an order upon the intervening and petitioning creditors for the payment of his fees, as provided in the 47th section of the bankrupt act [of 1867 (14 Stat. 540)].

THE COURT thereupon ordered the petition to be set down for a hearing, and notice to be given to the intervening and petitioning creditors, as well as to the bankrupt.

## Case No. 8,664.

### In re McBRIDE.

[1 Wkly. Notes Cas. 42.]

District Court, E. D. Pennsylvania. Oct. 21, 1874.

BANKRUPTCY PRACTICE—COSTS.

Proof of notice to petitioning creditors being made, THE COURT ordered that the clerk tax register's and clerk's costs and fees, and that the bankrupt pay the same.

McBRIDE (OSBORN v.). See Case No. 10,-593.

McBRIDE (PROCTER v.). See Case No. 11,-441.

## Case No. 8,665.

### In re McBRIEN.

[2 Ben. 513;[1] 2 N. B. R. 197 (Quarto, 73).]

District Court, S. D. New York. Oct. 27, 1868.

EXAMINATION OF BANKRUPT—ORDER—AFFIDAVIT.

Where the assignee of a bankrupt applied for an order for his examination, which was granted, and, after his examination under it had been commenced, the bankrupt moved to vacate the order because it was not founded on affidavit, which motion the register denied: *Held*, that the register's decision was correct.

[Cited in Re Solis, Case No. 13,165; Re Dole, Id. 3,965.]

[2] [The application of John Sedgwick, assignee, &c., of the above named bankrupt, shows: That he is the assignee of the estate and effects of the above named bankrupt, and that he applies for an order that the above named bankrupt attend before James F. Dwight, register, and submit to the examination required by the twenty-sixth section of

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [From 2 N. B. R. 197 (Quarto, 73).]